UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
HIMEN ROSS

                            Plaintiff,


            -against-                                    **CIVIL ACTION No.:**
                                                        16-cv-813

THE CITY OF NEW YORK, MARIA LARSON,
KEVIN CASHEN, EDWARD WILKOWSKI
and "JOHN DOE"                                          **JURY TRIAL**
                                                        **DEMANDED**

                            Defendants.
-----------------------------------------------------------------------X


### AMENDED COMPLAINT IN A CIVIL ACTION


**Issue: In the United States of America, can an innocent citizen be
incarcerated for six years awaiting trial without a remedy?**


1.      Where in the United States of America did this happen?

        Queens County, New York.

2.      Who is the citizen this happened to?

        Himen Ross, also known as "Ace".

3.      Why did this happen?

        Because the investigating officers, lacking sufficient credible evidence to indict

Himen Ross for the murder of Tyrece Johnson based on the story of two individuals,

procured the false testimony of a third, which when given to the prosecutor, was presented

to the Grand Jury and led to his indictment and incarceration for six years while awaiting

trial for a crime he did not commit and which a jury acquitted him on May 20, 2015.

4.      Himen Ross brings this action for compensatory damages, punitive damages and

attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil

rights, as said rights are secured by said statutes and the Constitution of the United States,

as well as state law.

## JURISDICTION

5.      This Court has original jurisdiction under 28 U.S.C. §1331, 1343, 42 U.S.C. §1988

and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

6.      Supplemental jurisdiction over plaintiff's state law claims exist pursuant to 28

U.S.C. §1367(a).

7.      On July 17, 2015 within 90 days of Himen Ross' acquittal of all criminal charges,

plaintiff served upon the Comptroller of the City of New York his Notice of Claim setting

forth the time when, the place where, and the manner in which the claim arose.

8.      More than 30 days have elapsed since the service of said Notice of Claim and no

adjustment or payment thereof has been made by the City of New York.

9.      At the request of the Comptroller of the City of New York, plaintiff submitted to an

oral examination on October 5, 2015.

10.     This action is being commenced within one year and ninety days of the date of

plaintiff's acquittal of all criminal charges and the plaintiff has complied with all statutory

conditions precedent to the commencement of this action.

## VENUE

11.     Venue properly lies in the Eastern District of New York under 28 U.S.C. §1391(b),

in that this is the district in which the claim arose.

**JURY DEMAND**

12.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to

Fed. R. Civ. P. 38(b).

**PARTIES**

13.     Plaintiff Himen Ross is a citizen of the United States of America and the State of

New York, and resides in Bronx County, New York.

14.     Defendant the City of New York was and is a municipal corporation duly organized

and existing under and by virtue of the laws of the State of New York.

15.     Defendant the City of New York operates the New York City Police Department,

authorized to perform all functions of a police department pursuant to the applicable

sections of the New York State Criminal Procedure Law, under the direction and

supervision of the City of New York.

16.     At all times relevant herein, Maria Larson was employed by the New York City

Police Department (NYPD), holding the rank of detective.

17.     At all times herein, Maria Larson was acting under color of state law.

18.     At all times relevant herein, Kevin Cashen was an employee of the NYPD, holding

the rank of detective.

19.     At all times herein, Kevin Cashen was acting under color of state law.

20.     At all times relevant herein, Edward Wilkowski was an employee of the NYPD,

holding the rank of detective.

21.     At all times herein, Edward Wilkowski was acting under color of state law.

22.     At all times relevant herein, "John Doe" was an employee of the NYPD, holding the

3

rank of detective and participated in the investigation and prosecution of Himen Ross,

including the procuring of false testimony from Robert Hinton and Jennien Manning.

23.  At all times herein, "John Doe" was acting under color of state law.

24.  At all times herein, the defendants acted jointly and in concert with each other.

## OVERVIEW OF UNDERLYING CRIMINAL CASE

25.  May 19, 2008:               Tyrece Johnson, 16 years old, is shot and killed in
                                 front of Sissy's Restaurant, in Far Rockaway, Queens.

     July 11, 2008:              Himen Ross is interviewed by detectives.

     April, 2009:                The Grand Jury indicts Himen Ross and Jeffrey Ghee for:

          PL 125.25-1            Murder in the second degree.

          PL 265.03-1B           Criminal possession of a weapon in the second degree.

          PL 265.03-3            Criminal possession of a weapon in the second degree.

     April 16, 2009:             Himen Ross is arrested.

     April 16, 2009-May 6, 2015: Incarcerated over six years awaiting trial.

     May 7, 2015-May 20, 2015:   Trial in N.Y.S. Supreme Court, Queens County.

     May 19, 2015:               Summations and charge, jury begins deliberating.

     May 20, 2015:               Jury returns **not guilty** verdict on all counts.

## THE ACTIONS OF THE INDIVIDUAL DEFENDANTS

26.  The 101st Precinct is located at 16-12 Mott Avenue, Far Rockaway, Queens.

27.  On May 19, 2008 Detective Kevin Cashen was assigned to the 101st Precinct as the

Shooting Homicide Detective.

28.  The Shooting Homicide Detective is a team of two detectives who handle all high

priority cases: shootings, homicides and robberies, as well as assisting other detectives.

29.     On May 19, 2008 at about 2:15 pm, he responded to the scene where Tyrece Johnson was killed.

30.     Detective Maria Larson was in charge of this investigation. By the time of trial, she had retired, and was not called to testify.

31.     Eyewitnesses reported seeing a person running from the scene wearing a gray sweatshirt with the hoodie up.

32.     Megia Carlito was arrested at the scene on May 19, 2008 and designated "the perpetrator."

33.     Detective Shimicka Meadows, a NYPD Crime Scene Detective, photographed the hooded sweatshirt he was wearing.

34.     She took a picture of the right sleeve because it showed what she believed to be blood.

35.     Upon completion of her photographing the sweatshirt she gave it back to a NYPD police officer to voucher.

36.     It wasn't her job to get it tested to see if it matched the blood of the victim, Tyrece Johnson.

37.     Neither Megia Carlito nor his blood stained hooded sweatshirt were deemed worthy of further investigation.

38.     Detective Edward Wilkowski was assigned to the Queens Homicide Squad and responded to the scene of Tyrece Johnson's killing on May 19, 2008.

39.     That same day the NYPD Crime Stoppers Unit was contacted and provided

5

information regarding Himen Ross, another male and a red mini-van.

40.     On May 20, 2008 a red mini-van was found on Beach 27th Street.

41.     On May 21, 2008 a search warrant was obtained for that mini-van and it was "processed" by the Crime Scene Unit.

42.     About a week later Detective Cashen met with Mack Peoples, the anonymous tipster who called Crime Stoppers.

43.     He met Mack Peoples again two weeks later and again in November, 2008.

44.     On July 11, 2008 Detective Wilkowski interviewed Himen Ross at the 101st Prec.

45.     In response to a question from Detective Wilkowski as to how he learned of the shooting, Himen Ross said that his girlfriend's mom told him and he read about it in "The Wave", a local newspaper.

46.     Detective Wilkowski forwarded to the prosecutor that Himen Ross **contradicted himself** regarding how he learned of the shooting: stating at one point that he heard it from his girlfriend's mom, and another that he read it in "The Wave" that day ("The Wave," a weekly paper does not come out until the end of the week and this shooting occurred on a Monday.)

47.     Himen Ross never told Detective Wilkowski that he read it in "The Wave" the day of the shooting.

48.     Himen Ross told Detective Wilkowski and the jury at his criminal trial, that:

- He is left handed.

- In October, 2007 he moved to Far Rockaway to help his aunt by watching her kids when she was at work.

6

- He doesn't know Mack Peoples.

- He never sold marijuana to Mack Peoples.

- On May 19, 2008 he was either with his girlfriend Desire or with his cousin
  Kerwin, six years old at the time, who he took to school.

- He was at his girlfriend's house around 2:45 pm about to leave when Desire's
  mom came in the house upset that a young man had been shot.

- He told her he was going to pick up his little cousin from school, which he did and
  got home around 3.

- He does not know Jeffrey Ghee.

- He does not know Lashawn Ghee.

- He had never been in a red mini-van that day.

- To enter his building, you needed a key.

- On May 19, 2008 the only hoodie he owned was brown.

- On May 19, 2008 he did not know Tyrece Johnson nor any members of his family.

- He never possessed a gun.

- He never killed Tyrece Johnson.

49.    On October 16, 2008 Lashawn Ghee was interviewed.

50.    In October, 2008 Robert Hinton, an acquaintance of Himen Ross, confined at Rikers
Island for an unrelated matter, gets the word that if he knows anything about the Tyrece
Johnson murder, it could lead to a more favorable plea deal for him.

51.    In early March, 2009, Robert Hinton directs the police to his aunt, Jennien Manning.

52.    Jennien Manning is interviewed on March 3, 2009.

7

53.    In early April, 2009 Jennien Manning testifies before the Grand Jury, which returns an indictment against Himen Ross.

### THE CURIOUS MACK PEOPLES

54.    On the date of Tyrece Johnson's death, Mack Peoples, a 40 year old security guard, called "Crime Stoppers." A week later he met in an unmarked police car with Det. Cashen.

55.    The story he told was:

   a) On May 19, 2008 he goes to Himen Ross' home to pay back $20 he owed him for marijuana he bought two weeks before "on credit" for a woman he was dating (he was married, but claims he was "separated" from his wife at this time).

   b)  He knew Himen Ross as "Ace."

   c) When Mack Peoples parked his car in front of Himen Ross's apartment building, he no sooner got out of his car, when a red minivan pulls up alongside of it.

   d)  "Jeffrey" [Ghee], a young man who Mack Peoples knew from the neighborhood, was the driver.

   e) Jeffrey Ghee was screaming to someone to get his gun and come down.

   f) Mack Peoples looks up to the third floor of the apartment building and sees Himen Ross by the window.

   g) Mack Peoples walks to Himen Ross's building, enters it and climbs up the stairs to the third floor.

   h) Jeffrey Ghee is behind him, screaming to Himen Ross to hurry up and get his gun.

   i)  Just as Mack Peoples is about to knock on Himen Ross's door, Himen  Ross unexpectedly opens it. He sees that Himen Ross has a gun.

8

j)  Mack Peoples tells Himen Ross he's there to pay back the $20 he owes him. Himen Ross takes the money, passes him and goes down the stairs with Jeffrey Ghee.

k) Jeffrey Ghee and Himen Ross exit the building ahead of him.

l)  By the time Mack Peoples exits the building, Jeffrey Ghee, Himen Ross and the red minivan are gone.

m) Mack Peoples drives to the local McDonalds. He sees Himen Ross and Jeffrey Ghee crossing the street.

n) He goes into the McDonalds, makes a purchase and plans to eat it at home, but first wants to drive to a CD store nearby.

o) On the way to the CD store he becomes trapped in traffic because the street up ahead is closed by the police.

p) He parks his car, gets out, walks towards the crowd, and sees the body of a young man [Tyrece Johnson] on the ground.

q) Mack Peoples was unnerved by the sight. The horror was compounded when the victim's mother arrived and saw her son.

r) Mack Peoples asks himself, did Himen Ross do this?

s) He decides to go back to Himen Ross' apartment hoping to find him there.

t) When asked by Detective Cashen why he would go back to Himen Ross' apartment, Mack Peoples responded that if he found Himen Ross there, it meant that Himen Ross didn't do it.

56.    This reasoning is hard to follow in that if Mack Peoples was at the scene for forty

minutes to an hour, it gave Himen Ross plenty of time to get back home.

57.     Mack Peoples conduct is all the more perplexing in that Detective Cashen found

him petrified to talk to him about Himen Ross and this occurrence. What sane person, after

seeing a young man dead on the ground, would go confront the man who he thinks is the

killer?

### THE TROUBLED LASHAWN GHEE

58.     Lashawn Ghee is Jeffrey Ghee's younger brother.

59.     In May of 2008 he was 15 years old and lived at the St. Johns Group Home in Far

Rockaway.

60.     On the morning of Tyrece Johnson's death he went "AWOL" from the group home

and called his brother Jeffrey Ghee to pick him up.

61.     After Jeffrey Ghee picked him up, Jeffrey picked up a friend, a person named "Ace."

62.     His brother took Ace to a phone store on Mott Avenue.

63.     Ace got out of the car and minutes later came back.

64.     Jeffrey Ghee then dropped Ace off.

65.     If credible, Lashawn Ghee's testimony, combined with Mack Peoples' story, would

constitute probable cause for the indictment of Himen Ross.

66.     However, there was a problem: Detective Cashen doubted them. For good cause.

67.     Six years later, when Lashawn  Ghee testified against Himen Ross in the criminal

trial, Lashawn's demeanor was so unbalanced, and his description of his relationship with

Tyrece Johnson, the victim, so unsettling that the Assistant District Attorney prosecuting

Himen Ross asked Lashawn in open court if he "shot Tyrece Johnson to death that day?"

[denied].

68.     A window into Lashawn Ghee's character can be gleaned from the fact that his grandmother had to obtain an order of protection against him.

## THE DESPERATE ROBERT HINTON

69.     The 101st Police Precinct is responsible for Far Rockaway.

70.     Far Rockaway has not benefited from the overall reduction in crime in New York City. The Hon. Kenneth Holder, of Supreme Court, Queens County in referring to crime in the Rockaway community stated "it is off the charts…it is almost like Afghanistan in terms of the level of violence that's out there."

71.     On June 10, 2008, Robert Hinton was arrested by 101st Precinct detectives for attempted murder and criminal possession of a loaded firearm [unrelated to the Tyrece Johnson murder].

72.     These are the same detectives investigating Himen Ross.

73.     Robert Hinton was a 20 year old black man living with his aunt, Jennien Manning, in Far Rockaway.

74.     Himen Ross, a 22 year old black man, was living with his aunt in Far Rockaway.

75.     They did not live far from each other.

76.     Maybe they knew each other?

77.     Maybe Robert Hinton knew something that could implicate Himen Ross in the murder of Tyrece Johnson?

78.     The detectives got the word to Robert Hinton that he may have information that they were interested in.

79.     Their offer: the most precious currency: freedom, by taking four years off the nine

year plea deal previously offered him.

80.     On October 3, 2008 there was a meeting with Robert Hinton, his attorney, an

Assistant District Attorney and detectives from the 101st Precinct. Other than the Limited

Use Immunity Agreement, no notes were made.

81.     Despite knowing Himen Ross, Robert Hinton says nothing useful.

82.     A detective asks if Himen Ross ever said anything to him about the murder of

Tyrece Johnson.

83.     He promises to think about it.

84.     Weeks turn into months.

85.     After nine months of incarceration at Rikers Island and the prospect of eight more

years of incarceration, the offer to reduce his time by four years is irresistible.

86.     Robert Hinton now remembers that on the day of Tyrece Johnson's death, Himen

Ross came over to his aunt's house and confessed.

87.     The detectives' prayers are answered: a confession. Probable cause.

88.     Problem: they don't believe him.

89.     They ask him, "Was anyone else present who may have overheard Himen Ross tell

you this?"

90.     Robert Hinton is desperate. He cannot get the deal offered based on his testimony

alone (see "Cooperation Agreement" dated March 31, 2009 attached). He needs someone

else. Who?

91.     He calls his aunt, Jennien Manning, and tells her what he needs.

## EVIDENCE LAUNDERING

92.     Up until approaching Robert Hinton in Rikers Island, the detectives involved can be accused of nothing more than incompetence. By focusing exclusively on Himen Ross to the exclusion of all others, they let the real murderer go free.

93.     Their focus on Himen Ross is all the more inexplicable in that they had no evidence connecting him to the murder: no forensic evidence that he was ever in the red mini-van, no eyewitness identifying him as the person who shot Tyrece Johnson, never retrieving the murder weapon or linking Himen Ross to it, and the fact that the shooter was right handed, and Himen Ross is left handed.

94.     Finally, no motive was ever offered as to why Himen Ross would kill a person he didn't even know.

95.     The individual defendants "crossed the Rubicon" by bribing Robert Hinton with freedom.

96.     When they didn't believe him, they required him to deliver a credible witness if he wanted the benefit of the deal.

97.     Their shield: how could they be faulted for innocently asking Robert Hinton did anyone else hear Himen Ross confess?

## THE CONFLICTED JENNIEN MANNING

98.     In the beginning of March, 2009 Jennien Manning receives a phone call from her nephew at Rikers Island. The next day she visits him.

99.     Robert Hinton tells her what she must say for him to get the plea deal offered.

100.    She agrees.

13

101.    The detectives are contacted.

102.    They meet with her on March 3, 2009.

103.    She tells them that she overheard Himen Ross tell her nephew "I got that…I shot him in the head in broad daylight on Mott Avenue."

104.    She testifies against Himen Ross before the Grand Jury in early April, 2009.

105.    She is convincing. The Grand Jury indicts Himen Ross.

106.    There are many reasons why persons lie under oath.  Gain is usually at the heart of it. Jennien Manning's gain was not material, but psychological. She was conflicted because she believed that her nephew, Robert Hinton was in Rikers Island because of her.

107.    Why? She told him about the refusal of an acquaintance to pay back money she loaned him. It was in an effort to collect the money owed his aunt, that Robert Hinton shot the borrower and was now incarcerated for.

108.    Who paid the price for this perjured testimony? Not the detectives who bought it, nor Robert Hinton who benefitted from it, but Himen Ross.

> **"Lasciate Ogne Speranza, Voi Ch'Intrate."**
> **["Abandon all hope, ye who enter here."]**
> **Dante Alighieri, The Divine Comedy**

109.    On April 16, 2009 Himen Ross, a citizen without any prior criminal conviction, was arrested and entered the first rung of hell: Rikers Island, where he would remain for six years awaiting trial.

### FIRST CAUSE OF ACTION
### MALICIOUS PROSECUTION UNDER STATE LAW

110.    Plaintiff repeats and reiterates each and every one of the foregoing allegations as if

more fully stated herein.

111.   Under New York Law, a claim for malicious prosecution requires:

(a) The initiation of a proceeding,

(b) Its determination favorably to plaintiff,

(c) Lack of probable cause, and

(d) Malice.

Savino v City of New York, 331 F. 3d 63, 72 (2d Cir. 2003)

112.   The individual defendants, individually and collectively, conspired to create testimony they knew was false or highly likely to be false to create the probable cause necessary to indict and prosecute Himen Ross for the murder of Tyrece Johnson.

113.   Such false or highly likely to be false testimony that they created and forwarded to the prosecutor to obtain an indictment, included:

a) Bribing Robert Hinton;

b) Not taking notes as required (reduced to a "DD5") during their meetings with Robert Hinton so that Himen Ross' defense counsel would have no paper (or electronic) trail to follow regarding the six month period from their first communication with Robert Hinton to the time Jennien Manning was interviewed on March 3, 2009;

c) Making the testimony of Mack Peoples and Lashawn Ghee credible by obtaining the false testimony of a third person, Jennien Manning, identifying Himen Ross as the killer;

d) Detective Wilkowski falsely stating that Himen Ross said he learned of the murder on the day of the occurrence from the local newspaper (when the local newspaper

15

did not come out until the following Friday); and

e) Failing to provide the prosecutor and thus Himen Ross' defense counsel with exculpatory material showing that Himen Ross had no credible connection to the murder of Tyrece Johnson.

114.     The individual defendants forwarded this tainted evidence to the prosecutor, who then used it to bring charges against Himen Ross.

115.     In April, 2009 an indictment was voted against Himen Ross.

116.     On April 16, 2009 Himen Ross was arrested and incarcerated at Rikers Island.

117.     On May 20, 2015 Himen Ross was exonerated of all charges by a jury.

118.     There was no probable cause for the indictment and the continuation of the criminal proceedings against plaintiff.

119.     The individual defendants acted with actual malice.

120.     Defendant City of New York is liable under the principle of respondeat superior.

## SECOND CAUSE OF ACTION
## RIGHTS OF PERSONS ACCUSED OF CRIME

121.     The New York State Civil Rights Law §12 provides:

> "In all criminal prosecutions, the accused
> has a right to a speedy and public trial…"

122.     There was no justification for keeping Himen Ross waiting over six years for his trial.

123.     Under the circumstances of this prosecution, Himen Ross was deprived of his right under Civil Rights Law §12 to a speedy trial and is entitled to monetary damages.

16

**THIRD CAUSE OF ACTION**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983:**
**(INDIVIDUAL DEFENDANTS)**

124.   Plaintiff repeats and reiterates each and every one of the foregoing allegations as if

more fully stated herein, including paragraphs 106, 107, 108, 109, 110, 111, 112 and 113.

125.   A malicious prosecution claim pursuant to §1983 requires:

(a) The initiation of a proceeding,

(b) Its determination favorably to plaintiff,

(c) Lack of probable cause,

(d) Malice, and

(e) Plaintiff suffered a "post-arraignment liberty restraint that implicates the

plaintiff's Fourth Amendment rights."

Rohman v N.Y.C. Transit Auth., 215 F. 3D 208, 215 (2d Cir. 2000)

126.   The Fourth Amendment provides, in part:

"The right of the people to be secure in their
persons…against unreasonable searches and
seizures, shall not be violated."

127.   The Fifth Amendment provides, in part:

"No person shall…be deprived of life, liberty, or
property without due process of law."

128.   The Sixth Amendment provides, in part:

"In all criminal prosecutions, the accused shall
enjoy the right to a speedy and public trial."

129.   The conduct of the individual defendants:

a) Was under color of state law;

17

b) Deprived Himen Ross of his constitutional rights; and

c) Caused Himen Ross to be incarcerated for over six years awaiting trial.

130.    The actions of the individual defendants in forwarding to the prosecutor the fraudulent evidence which formed the basis of Himen Ross' indictment caused the post-arraignment deprivation of liberty that rises to the level of a constitutional violation in that he was incarcerated for over six years awaiting trial.

## FOURTH CAUSE OF ACTION
## DENIAL OF RIGHT TO A FAIR TRIAL

131.    Plaintiff repeats and reiterates each and every one of the foregoing allegations as if more fully stated herein.

132.    "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable  in an action for damages under 42 U.S.C. §1983"

Ricciuti v N.Y.C. Transit Auth., 124 F.3D 123, 130 (2d Cir. 1997)

133.    Here, the individual defendants created the false information detailed in paragraphs 112, 113, 114, 115, 116, 117 and 118 which they knew would likely influence the prosecutor to seek an indictment against Himen Ross as well as influence a Grand Jury to indict him, violating his constitutional right to a fair trial. The harm occasioned by such an unconscionable action is redressable in this action for damages under 42 U.S.C. §1983.

134.    While there is no constitutional right to be free from having evidence fabricated against an individual, this action rises to a constitutional violation if an individual is

deprived of his liberty because of the fabrication.

Zahrey v Coffey, 221 F 3d 342 (2d Cir 2000)

135.    There was no credible evidence connecting Himen Ross to the murder of Tyrece

Johnson except for the fabricated testimony detailed above.

136.    Himen Ross was deprived of his liberty for over six years while incarcerated at

Rikers Island without due process of law.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**
**BY THE CITY OF NEW YORK PURSUANT TO 42 U.S.C. §1983**

137.    Plaintiff repeats and reiterates each and every one of the foregoing allegations as if

more fully stated herein.

138.    Pursuant to Federal Civil Rights Law 42 U.S.C. §1983, Himen Ross was deprived of

his federal constitutional rights under color of state law to be free from unreasonable seizure

(Fourth Amendment), deprived of his liberty without due process of law (Fifth

Amendment), and denied his right to a speedy trial (Sixth Amendment).

139.    42 U.S.C. §1983 provides in part that:

> every person who, under color of state law, subjects
> or causes to be subjected any citizen of the United States . . .
> to the deprivation of any rights, privileges, or immunities
> secured by the United States' Constitution and federal laws
> shall be liable to the party injured.

140.    42 U.S.C. §1983 creates a remedy for violations of constitutional and federal rights.

141.    To prove a claim against the City of New York under 42 U.S.C. §1983 plaintiff

must establish that an identifiable municipal policy, practice or custom is responsible for the

constitutional violation.

19

<u>Monell v Dep't of Social Servs.,</u> 436 U.S. 658 (1978)

142.    The individual defendants are among the most senior investigating officers in the

NYPD.

143.    Detective Cashen was with the NYPD for 32 years. As the 101st Precinct Shooting

Homicide detective he and his partner handled all high priority cases within the precinct.

144.    Detective Larson was Detective Cashen's partner and the individual in charge of the

investigation of Tyrece Johnson's murder.

145.    Detective Edward Wilkowski was employed by the NYPD for 25 years, 19 years as

a detective and assigned to the Queens Homicide Squad, who's responsibility was to assist

precinct detectives in homicide investigations.

146.    No one supervised their work. They supervised others.

147.    They set the standards. They set the example. They decided what leads to pursue or

ignore.

148.    When the testimony of Mack Peoples and Lashawn Ghee failed to provide probable

cause, they induced the Queens County District Attorney's office to offer Robert Hinton a

better plea deal to obtain his cooperation.

149.    They determined, once Robert Hinton's story was obtained, that he wasn't credible.

150.    Instead of turning to other suspects, they "doubled down" and pressured Robert

Hinton to deliver a person who "overheard" Himen Ross' supposed confession if he wanted

the benefit of the reduced plea.

151.    The practice succeeded when he delivered Jennien Manning.

152.    It was (and is) the practice of the NYPD to use "freedom" as a bribe to obtain

20

testimony, which in this case, they knew or had a high suspicion, was false.

153.    Once the individual defendants provided this false and fabricated testimony to the

District Attorney's office, momentum carried the day: it was used to obtain an indictment

against Himen Ross and deliver him into a state system where neither the District Attorney

nor judge involved felt any responsibility for a presumed innocent citizen to be incarcerated

for over six years awaiting trial.

**SIXTH CAUSE OF ACTION**
**SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL**

154.    Plaintiff repeats and reiterates each and every one of the foregoing allegations as if

more fully stated herein.

155.    The Sixth Amendment provides, in part:

> "In all criminal prosecutions, the accused shall
> enjoy the right to a speedy and public trial."

156.    This right is made applicable to the states by the due process clause of the

Fourteenth Amendment. Plaintiff brings this claim pursuant to 42 U.S.C. §1983 in that:

- He was deprived of his right to a speedy trial secured by the Sixth Amendment;

- By persons (the individual defendants) acting under the color of state law.

157.    Plaintiff must further show that he was presumptively prejudiced by the delay.

158.    In the Second Circuit, a general consensus has been reached that a delay of over

eight months establishes presumptive prejudice. See, e.g. United States v Vassell, 970 F.2d

1162, 1164 (2d. Cir.1992)

159.    Here, plaintiff was found not guilty of the charges and severely prejudiced by being

forced to spend six years in prison for a crime he did not commit.

160.    Under the circumstances of this prosecution, Himen Ross was deprived of his right

to a speedy trial pursuant to the Sixth Amendment and is entitled to monetary damages.

### SEVENTH CAUSE OF ACTION
### BAN AGAINST CRUEL AND UNUSUAL PUNISHMENT

161.    Plaintiff repeats and reiterates each and every one of the foregoing allegations as if

more fully stated herein.

162.    The Eighth Amendment protects convicted prisoners in state custody from "cruel

and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the

hands of prison officials. Wilson v Seiter, 501 U.S. 294, 297 (1991).

163.    The due process clauses of the Fifth and Fourteenth Amendments protect pretrial

detainees in state custody from "cruel and unusual punishment."

164.    The Eighth Amendment, or due process clause of the Fourteenth Amendment, is

violated when:

- The deprivation alleged is objectively, sufficiently serious; and

- [Usually prison] officials acted with deliberate indifference to inmate health or

safety.

Farmer v Brennan, 511 U.S. 825, 832 (1994)

165.    For plaintiff, the deprivation was catastrophic: he was incarcerated for six years.

166.    For plaintiff, the individual defendants did not act with deliberate indifference, they

intentionally provided the false information relied upon by the prosecutor to secure an

indictment leading to plaintiff's arrest and incarceration.

167.    Under the circumstances of this prosecution, keeping Himen Ross incarcerated for

six years to obtain a trial to prove his innocence was cruel and unusual punishment.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against defendants for:

1.      Compensatory damages in an amount to be determined;

2.      Punitive damages against the individual defendants in an amount to be determined;

3.      Pre-judgment interest as allowed by law;

4.      An order awarding plaintiff a reasonable attorney's fee, together with costs and disbursements, pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court; and

5.      Such other and further relief as this Court may deem just and proper.

Dated: March 11, 2016

Paul H. Schietroma, P.C.

By: Paul H. Schietroma (PS0018)
Attorney for Plaintiff
1825 Park Avenue, Suite 604
New York, New York 10035
(212) 714-2100
Paul@phslaw.net

23